**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KENYATTA ALLEN** | * | **CIVIL ACTION NO.:** 1:25cv196 TBM-RPM |
| | * | |
| **VERSUS** | * | **SECTION:** |
| | * | |
| **THE KANSAS CITY SOUTHERN** | * | |
| **RAILWAY COMPANY d/b/a** | * | **MAG. DIV.:** |
| **CANADIAN PACIFIC KANSAS CITY** | * | |
| **d/b/a CPKC** | * | |
| | * | **JURY TRIAL REQUESTED** |
| ************************************* | | |

**COMPLAINT FOR DAMAGES**

COMES NOW the Plaintiff, KENYATTA ALLEN, by and through his undersigned counsel, and complains and alleges against Defendant THE KANSAS CITY SOUTHERN RAILWAY COMPANY d/b/a CANADIAN PACIFIC KANSAS CITY d/b/a CPKC as follows:

**PARTIES**

1.      Plaintiff is an adult individual residing in the city of Hickory, County of Newton, and State of Mississippi.

2.      Defendant, The Kansas City Southern Railway Company d/b/a Canadian Pacific Kansas City d/b/a CPKC (hereinafter referred to as "Defendant" or "KCSR") is and was at all times material hereto, a corporation duly organized under the laws of the State of Missouri with its principal place of business in the city of Kansas City, County of Jackson, State of Missouri and was engaged in interstate transportation, operating an interstate system of railroads in and through the United States of America, including specifically the State of Mississippi. Defendant KCSR is registered to do business in the State of Mississippi and can be served via its registered agent: C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

1

## JURISDICTION AND VENUE

3.      The wrongful conduct giving rise to this lawsuit occurred in the County of Harrison, State of Mississippi. At all relevant times herein mentioned, Plaintiff was employed by KCSR as a conductor and engineer, by Defendant KCRS and/or its predecessors in interstate commerce within the meaning of the Federal Employers' Liability Act. Plaintiff was diagnosed with an occupationally related cancer.

4.      At all times relevant hereto, Defendant, KCSR, was engaged in interstate commerce in and throughout several states of the United States as a common carrier by rail and for the purposes hereof did operate locomotives, railroad cars and repair facilities, and transacted substantial business throughout the various states of the United States, including the State of Mississippi.

5.      This Honorable Court possesses federal question jurisdiction by virtue of 28 U.S.C. § 1331, as this claim arises under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq*.

6.      Venue is proper in the Southern District of Mississippi as this geographic district is where the cause of action(s) arose and/or accrued, and Defendant, KCSR, at all times mentioned herein was doing business in the Southern District of Mississippi as a common carrier engaged in interstate commerce.

7.      This is an action arising under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*., commonly referred to as FELA, to recover damages for personal injuries sustained by the Plaintiff in the line of duty while he was employed as a conductor and engineer by the Defendant, KCSR, in its Transportation Department and while engaged in interstate commerce.

8.      At all times material herein Defendant, KCSR, was and is a corporation organized and existing according to law, conducting business as a common carrier by railroad in and through interstate commerce with facilities, tracks, and employees located in and through the numerous states, including the State of Mississippi where Plaintiff's injuries occurred.

## GENERAL ALLEGATIONS

9.     Plaintiff worked for Defendant as a conductor and engineer from approximately July 2012 to present throughout the States of Mississippi and Louisiana.

10.     During the course and in the scope of his employment with Defendant, Plaintiff was engaged in the furtherance of interstate commerce within the meaning of FELA.

11.     Defendant was, at all times relevant to this complaint, engaged in interstate commerce in and throughout several states of the United States as a common carrier by rail and for the purposes hereof did operate locomotives, railroad cars and repair facilities and transacted substantial business throughout the various states of the United States.

12.     Defendant, at all times relevant to this complaint, conducted substantial business within the state of Mississippi. Defendant owned, managed, maintained, used and conducted substantial operations at multiple major facilities and offices, all located within the state of Mississippi, including the operation of regularly scheduled trains arriving into and departing from its multiple facilities in Gulfport, Mississippi, among other locations. Defendant derived substantial revenue from operations within the state of Mississippi and continues these operations to this day.

13.     During the course and scope of Plaintiff's employment during his career with Defendant and while working in its yards, along its right of ways, rails, buildings, locomotives, freight cars, and passenger cars, and tracks, Plaintiff was, on a daily basis throughout his career, regularly and routinely exposed to various toxic substances and carcinogens known to cause cancer including large quantities of diesel fuel, diesel exhaust, diesel fumes, diesel smoke, diesel exhaust soot, benzene, polycyclic aromatic hydrocarbons ("PAHs"), creosote, silica sand, coke, herbicides, and asbestos in addition to others that may be discovered during litigation.

14.     Specifically, while working for Defendant, Plaintiff's daily work required him to work inside, behind, and alongside idling locomotives for long periods of time exposing him to at least the following carcinogens on a routine, daily basis: diesel fuel, diesel exhaust, diesel fumes, diesel smoke, diesel exhaust soot, benzene, coke, and PAHs.

15.     Plaintiff's work required him to transport various chemicals and substances which exposed him to carcinogens on a routine, daily basis, including, but not limited to coke and benzene.

16.     Plaintiff's work required him to deliver railroad ties on "work trains;" pass workers repairing railroad ties; and/or stand in close proximity to railroad ties while working alongside trains, exposing him to toxic levels of creosote and benzene on a daily basis.

17.     Plaintiff's work exposed him to unreasonably dangerous amounts of silica sand by inhalation and/or skin absorption because he would work in close proximity to the silica sand in various yards used by Defendant.

18.     Plaintiff's work required him to work with and/or in close proximity to locomotive brake shoes which were made at least partly with asbestos, exposing him by inhalation and/or skin absorption to asbestos fibers on a daily basis.

19.     Plaintiff's work also required him to work in locomotives with asbestos wrapped pipes and insulation, exposing him by inhalation and/or skin absorption to asbestos fibers on a daily basis.

20.     Plaintiff's exposure to the above referenced toxic substances, which are known cancer causing agents, steadily over a course of many years caused, in whole or in part, his development of kidney cancer.

21.     The toxic substances are known cancer-causing agents based on peer-reviewed

4

literature, OSHA and IARC publications, and other treatises and scientific studies.

22.     Before and during Plaintiff's employment with Defendant, Defendant knew that Plaintiff's exposure to toxic substances could foreseeably lead to cancer.

23.     Plaintiff's exposure to the toxic substances occurred regularly and routinely, on a daily basis, by touch, inhalation and/or consumption at all of the locations Plaintiff worked and performed his regular, routine job duties for Defendant, KCSR, including, but not limited to, locations in Harrison County and Gulfport, Mississippi.

24.     Before and during Plaintiff's employment with Defendant, Defendant should have known that Plaintiff's exposure to the toxic substances could foreseeably lead to cancer because studies, proceedings and literature took place and/or existed regarding the same during and/or before Plaintiff's employment, such as, for instance, and without limitation, proceedings of the Association of American Railways in the 1950s and 1960s; and studies done by epidemiologists in North America and Europe focusing on workers in occupational environments similar to Plaintiff's including as long as ago as 1895 and up through Plaintiff's employment.

## COUNT I: NEGLIGENCE AGAINST DEFENDANT, KCSR

25.     Plaintiff incorporates paragraphs 1–24 as if fully set forth herein.

26.     It was the duty of Defendant, as Plaintiff's employer, at all times relevant to this Complaint, to use ordinary care to provide Plaintiff with a reasonably safe place in which to do his work.

27.     As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to measure the concentrations of the toxic substances released into Plaintiff's work area.

28.     As part of that duty to provide a reasonably safe place in which to do work,

Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide adequate warnings of the dangers of the toxic substances.

29.     As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances.

30.     As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide hazard control.

31.     "Hazard control" as used in paragraph 30 includes the use of engineering controls.

32.     "Hazard control" as used in paragraph 30 includes the use of administrative controls.

33.     "Hazard control" as used in paragraph 30 includes the use of personal protective equipment, including requiring the use of respirators.

34.     During Plaintiff's employment, Defendant breached said duty in at least one or more of the following ways:

     A.     Failure to use ordinary care and caution to provide the Plaintiff with a reasonably safe place in which to work as required by the FELA;

     B.     Failure to take reasonably effective action to reduce, modify or eliminate certain job duties, equipment or practices so as to minimize or eliminate the Plaintiff's exposure to the toxic substances;

     C.     Failure to reasonably test railroad facilities, equipment, yards, buildings, and right of ways for the presence of the toxic substances;

     D.     Failure to reasonably engage in follow-up monitoring of its facilities,

equipment, yards, buildings, and right of ways for the presence of the toxic substances;

E.  Failure to properly reduce to safe levels or remove known toxic materials and carcinogens from its facilities, equipment, yards, buildings, and right of ways;

F.  Failure to periodically test employees such as the Plaintiff for physical effects of exposure to the toxic substances and failing to take appropriate action, including advising the Plaintiff as to the test results;

G.  Failure to warn Plaintiff of the risk of contracting cancer or other diseases as a result of exposure to the toxic substances;

H.  Failure to make reasonable efforts to inspect or monitor the levels/amounts of exposure, of Plaintiff, to the toxic substances;

I.  Failure to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances;

J.  Failure to consult scientific and medical research evidence concerning the hazards of the toxic substances;

K.  Allowing unsafe practices to become standard practice;

L.  Failure to limit access to areas where these harmful materials were being used;

M.  Failure to institute and/or enforce safety procedures and plans for adequate protection of Plaintiff;

N.  Failing in additional ways, as will be revealed during discovery; and

O.  Any and all other acts of negligence which may be shown at a trial on the

merits.

35.    The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants and/or employees.

36.    It was the duty of Defendant, as Plaintiff's employer, at all times relative to this complaint, to use ordinary care to provide Plaintiff with reasonably safe and suitable tools, machinery, and appliances with which to do his work.

37.    Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 36 included at least requiring Plaintiff to wear a respirator mask.

38.    Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 36 included at least the monitoring of equipment emissions of any of the toxic substances, which includes reasonably upgrading equipment, either in whole or in part, so as to implement technology that reduced equipment emissions of any of the toxic substances.

39.    During Plaintiff's employment, Defendant breached said duty in at least one or more of the following ways:

    A.  Failure to provide adequate ventilation systems for diesel exhaust where Plaintiff regularly worked;

    B.  Failure to provide Plaintiff with knowledge as to what would be reasonably safe and sufficient apparel and proper protective equipment to protect him from being poisoned and injured by exposure to the toxic substances; and,

    C.  Failure to provide Plaintiff with protective equipment designed to protect him from exposure to the toxic substances.

40.     The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants, and/or employees.

41.     The Federal Locomotive Inspection Act, 49 USC § 20701, requires that locomotives are in proper condition and safe to operate without unnecessary danger of personal injury and KCSR failed to satisfy this requirement during the course of Plaintiff's employment in at least the following respects:

A.   Failure to provide the Plaintiff with locomotives that had proper, working, and adequate ventilation and/or air filtration systems, the failure of which allowed diesel fumes, diesel exhaust, herbicides, coke dust, brake dust, PAHs, and benzene to accumulate in train compartments at toxic levels;

B.   Failure to provide the Plaintiff with locomotives that had air conditioning, which required operation of the locomotives with the windows down, and allowed diesel fumes, diesel exhaust, herbicides, coke dust, brake dust, PAHs, and benzene to accumulate in train compartments at toxic levels;

C.   Failure to install proper engine exhaust filters which allowed diesel fumes, diesel exhaust, PAHs, and benzene to accumulate in train compartments at toxic levels;

D.   Failure to institute proper maintenance procedures, preventing toxic dust, fumes, and soot—described above—from accumulating in train compartments at toxic levels;

E.   Failure to utilize lower emissions fuel such as bio diesel which allowed diesel fumes, diesel exhaust, PAHs, and benzene to accumulate in train compartments at toxic levels; and

F.   Failure to mandate cleaner burning engines from the locomotive manufacturers

which allowed diesel fumes, diesel exhaust, PAHs, and benzene to accumulate in train compartments at toxic levels.

42.     The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants, and/or employees.

43.     As a direct result of one or more of the foregoing negligent acts of Defendant, in addition to others not specifically mentioned but that may be discovered during litigation, Plaintiff developed kidney cancer.

44.     Plaintiff experienced and endured, and in the future will experience and endure: pain and suffering, inconvenience, irritation, annoyance; emotional distress; medical expenses associated with diagnosis and treatment; lost wages, disability, loss of normal life, increased susceptibility to injury, shortened life expectancy, and caretaking expenses, in addition to other injuries and expenses that would otherwise not have been necessary absent Defendant's negligence.

45.     Plaintiff suffers from a constant fear of death because of his cancer.

46.     Within three years of the filing of this Complaint, Plaintiff learned that his cancer was caused, at least in part, by the negligence of the Defendant.

47.     Plaintiff demands all damages reasonable in the premises and specifically itemizes the following damages for which he seeks recovery:

   a.   Physical Pain and Suffering, Past and Future;

   b.   Mental Pain and Suffering, Past and Future;

   c.   Permanent Disability;

   d.   Loss of Enjoyment of Life;

   e.   Future Medical Expenses and Life Care Needs;

   f.   Unpaid Past Medical Expenses; and

g.  All other economic and non-economic damages.

48.     Plaintiff reserves the right to supplement and amend this Complaint, as additional

facts become known to him.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Kenyatta Allen, prays that Defendant KCSR be duly served

with a copy of this Complaint and be summoned to appear and answer same and after due

proceedings are held that there be Judgment granted herein in favor of Plaintiff, Kenyatta Allen,

and against said Defendant, KCSR, for all sums reasonable in the premises, together with legal

interest thereon from the date of judgment, until paid, for all costs of these proceedings and for all

general and equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff, Kenyatta Allen, hereby demands a trial by jury of all issues triable as a matter of

right by a jury.


Dated: June 19, 2025                    Respectfully submitted,

                                        **POOLSON | ODEN**

                                        /s/ Daniel J. Poolson, Jr.
                                        Daniel J. "Danny" Poolson, Jr.
                                        MS Bar Roll #105045
                                        Carisa German-Oden
                                        LA Bar Roll #34163 (*pro hac vice pending*)
                                        One Lakeway
                                        3900 N. Causeway Blvd., Suite 680
                                        Metairie, LA 70002
                                        504.766.2200 │ Office
                                        504.766.2070 │ Facsimile
                                        Email: Danny@PoolsonOden.com
                                        Email: Carisa@PoolsonOden.com
                                        *Attorneys for Plaintiff*